No. 16,779.

## WHITNEY ET AL. *v.* MARSHALL.

FORMER ADJUDICATION.—*Decree as to Matters Outside the Issues.—Fraudulent Conveyance.—Inchoate Interest of Wife.—When can not be Sold.*—Where the only issue presented in a suit as to setting aside as fraudulent as against the husband's creditors a conveyance to the wife, and to subject the land to the payment of the husband's debts, and the court found for the plaintiffs, and in addition to decreeing the conveyance fraudulent and setting it aside and subjecting it to the payment of the husband's debts, the court decreed that the wife's inchoate interest therein be sold and forever barred, that part of the decree relating to the inchoate interest of the wife was outside of the matters submitted to it by the pleadings of the parties, is not *res judicata,* and is not conclusive or binding on the parties.

FRAUDULENT CONVEYANCE.—*Real Estate.—Inchoate Interest of Wife.—Land Bought with Husband's Money and Fraudulently Conveyed to the Wife.—Judicial Sale.—Partition.*—Where real estate is bought with the husband's (A's) money and he fraudulently procures the vendor to convey the same to his (A's) wife, if such conveyance be held fraudulent, and the land subjected to the payment of the husband's creditors, the wife is entitled to her inchoate interest therein, and is entitled to partition of the same when the title in the vendee under the judicial sale becomes absolute.

From the Vigo Superior Court.

*B. E. Rhoads* and *E. F. Williams,* for appellants.

*C. R. Trowbridge* and *T. W. Harper,* for appellee.

McCABE, J.—The appellee sued the appellants in the court below to obtain partition of certain real estate in Vigo county, describing it, and alleging that she was the owner in fee simple of the undivided one-third thereof, and that appellants owned the other two-thirds in fee as tenants in common with her.

Appellants answered by a general denial, and filed a cross-complaint on which issues were formed, in which cross-complaint they set up a former adjudication in a suit between them and appellee in the United States Cir-

cuit Court for the district of Indiana, by which they claimed that appellee was adjudged to have no title whatever in said real estate, and in which adjudication said real estate was ordered to be sold to satisfy a judgment in favor of appellants and against appellee's husband, James A. Marshall, and that they purchased under such decree. A trial resulted in a finding and judgment of partition, requiring one-third of said real estate to be set off to appellee and the other two-thirds to the appellants.

The overruling of the appellants' motion for a new trial is the only error properly assigned. The grounds assigned in the motion are, that the finding is not sustained by the evidence, and is contrary to law.

The record shows that the real estate in controversy was purchased and paid for by the husband of appellee, the title being taken in the name of the appellee, his wife, while he was in failing circumstances, and for the purpose of hindering, delaying and defrauding his then existing creditors, among whom were the appellants.

The appellants thereupon brought suit against said James A. Marshall, in the Vigo Superior Court, to collect their debt against him, and attached the real estate now in controversy, treating the same as fraudulently conveyed to his wife, and subject to attachment against him.

That suit was, on petition of appellants, removed for trial into the circuit court of the United States for the district of Indiana.

That case was put at issue and tried in the latter court, resulting, on the 29th day of September, 1887, in a judgment in favor of appellants and against said James A. Marshall, for $6,029.65, with an order for the sale of the attached property, that being the real estate now in controversy, to satisfy said judgment. Mrs. Marshall, the appellee here, was not a party to that suit.

The proper order of sale was issued and placed in the hands of the United States marshal, and thereupon Mrs. Marshall began a suit in the superior court of Vigo county against the present appellants to quiet her title to the real estate now in controversy here. Her complaint was in a single paragraph in the usual form.

Further proceedings looking to a sale by the marshal until that suit could be determined were suspended by the marshal, presumably at the request of the judgment plaintiffs, the present appellants.

On their petition, the suit of Mrs. Marshall to quiet title was also removed for trial into the United States Circuit Court for the district of Indiana. In that court the then defendants, the present appellants, filed an answer and a cross-complaint against Mrs. Marshall. The substance of that cross-complaint is that the then cross-complainants had recovered the judgment already mentioned, stating the specific description of the indebtedness upon which the judgment had been founded; it also stated that they had in that proceeding charged that said James A. Marshall was then conveying and disposing of, and had conveyed and disposed of, his property with a fraudulent intent to cheat, hinder and delay his creditors, upon which they had caused the real estate in question to be attached; that issues were formed upon said cross-complaint against Mrs. Marshall, resulting in a finding and judgment in their favor specifically decreeing the sale of said property to satisfy the judgment theretofore recovered against her husband.

Their cross-complaint further alleged that at the time of said conveyance, and at the time of said suit, the said James A. Marshall had no other property in the State of Indiana subject to execution, and that the said conveyance was made with the fraudulent purpose to cheat, hinder and delay his creditors, of all of which facts the

plaintiff, Mrs. Marshall, had knowledge, and to all of
which fraudulent acts of her husband she was a party;
that said judgment remained wholly unpaid and unsatis-
fied, and that the order of sale already mentioned was
still in the hands of the marshal unexecuted and unsat-
isfied; that said James A. Marshall was a nonresident of
the State of Indiana, and that he has no other property
out of which defendants' judgment may be made; that
said property is worth less than $4,000, and subject to a
mortgage of $2,200; that said property is the proceeds of
a certain stock of goods owned by said James A. Mar-
shall, and for which he received the said real estate, tak-
ing the title thereto in the name of his wife, the com-
plainant, without any consideration moving from her to
him.

Prayer that the title to the said real estate be quieted
in James A. Marshall, and that the same be sold to sat-
isfy said judgment, and proper relief.

On the hearing, the federal court dismissed Mrs. Mar-
shall's complaint to quiet title, and found that the alle-
gations of the cross-bill just mentioned were true and
sustained by the evidence.

Upon this finding, a specific decree and judgment was
rendered, setting forth the relief granted, among which
is the following, viz: "It is further adjudged and de-
creed by the court that if the said complainant (Mrs.
Marshall) shall not pay the judgment heretofore rend-
ered in this court against the said James A. Marshall,
her husband, as appears of record in law order-book 5 of
this court, page 369, *et seq.*, within ten days from the
date of this judgment, then said property, to wit: (de-
scribing it) be sold as other lands are sold upon execu-
tion, to be issued upon the said judgment without relief
from valuation or appraisement laws, * * * and
that all claim, right, title or interest of any kind of the

said Nannie A. Marshall in and to said real estate be forever foreclosed, barred and cut off by said sale, and that the purchaser have full and complete title to the entire property, as against said Nannie A. Marshall and James A. Marshall, and any person claiming by, through or under them, or either of them.''

After the rendition of the foregoing decree, the marshal sold the real estate to the judgment plaintiffs, the present appellants, and afterwards, at the proper time, executed to them a deed conveying said real estate to them pursuant to said sale.

After that, Mrs. Marshall, the present appellee, began this suit for partition, claiming that under the statute she was entitled to one-third thereof. It provides that ''In all cases of judicial sales of real property in which any married woman has an inchoate interest by virtue of her marriage, where the inchoate interest is not directed by the judgment to be sold or barred by virtue of such sale, such interest shall become absolute and vest in the wife in the same manner and to the same extent as such inchoate interest of a married woman now becomes absolute upon the death of the husband whenever, by virtue of said sale, the legal title of the husband in and to such real property shall become absolute and vested in the purchaser thereof.''

It then provides that she may have partition.    1 Burns' R. S. 1894, section 2669; R. S. 1881, section 2508.

The controversy here is narrowed down to two propositions urged by the appellants' learned counsel, either one of which, if tenable, would establish that the finding in favor of the appellee is not sustained by the evidence and is contrary to law.

One of those propositions is that the decree of the Federal court directed appellee's inchoate interest to be

sold or barred by virtue of the sale; and the other is that the appellee never had any inchoate interest in the real estate in question because her husband never owned it, and on his death, for that reason, no part of it could have descended to her. There can be no doubt that the language of the decree above quoted was intended to have the effect to direct the inchoate interest of the appellee to be sold or barred, and if that decree is effective in accomplishing its object, then the finding of the trial court was both contrary to law and unsustained by the evidence. If that part of the decree is valid, then appellee's inchoate interest, if she had any, was sold and barred.

But it is contended, on behalf of the appellee, that such part of the decree is not valid. It will be observed that appellee's complaint to quiet title was as hostile to an inchoate interest in herself as it was to any interest that the then defendants, the present appellants, may have had in the real estate. Her complaint claimed that she owned it in fee-simple and made no other claim to it. It is difficult to see how an adverse decision on such single claim, her husband still living, could involve an adjudication against her inchoate interest. Be that as it may, it is sufficient to say that her complaint on the hearing was dismissed for want of equity, and the whole judgment and decree was founded upon the cross-bill of the then respondents, the present appellants. That cross-bill stated no fact invoking the judgment or decree of the court ordering her inchoate interest sold or barred by virtue of the sale. It proceeded wholly on the theory that the purchase of the real estate in controversy with her insolvent husband's means, and the taking the title in her name was designed by them both to defraud his creditors, and that such conveyance was fraudulent as against such creditors, among whom were the then cross-

complainants, and that such conveyance ought to be set aside and the title quieted in such insolvent debtor, James A. Marshall, and the property subjected to sale on execution against him to satisfy said judgment. No other relief was asked, no other relief was prayed for, and no other relief was within the scope of the pleading upon which the judgment was founded. It is very clear, therefore, that that part of the decree we are considering was outside of the issue and had no pleading on which to rest.

In *McFadden* v. *Ross*, 108 Ind. 512, at pages 516, 517, it was said: "The proposition, that the judgment of a court having jurisdiction of the parties and the subject-matter, is conclusive, has become a settled maxim of the law. This, however, means nothing more than that such judgment is conclusive upon all questions which were, or might have been, litigated and determined within the issues before the court. Neither reason nor authority lends any support to the view, that because suitors have submitted certain designated matters to the consideration of a court, the tribunal is thereby authorized to determine any other matter in which the parties may be interested, whether it be involved in the pending litigation or not. 'Persons by becoming suitors do not place themselves for all purposes under the control of the court, and it is only over those particular interests which they choose to draw in question that a power of judicial decision arises.'" Citing *Munday* v. *Vail*, 34 N. J. 418; *Fairchild* v. *Lynch*, 99 N. Y. 359; *King* v. *Chase;* 15 N. H. 9, 41 Am. Dec. 675; *Wood* v. *Jackson*, 8 Wend. 9, 22 Am. Dec. 603; *Smith* v. *McCool*, 16 Wall. 560; Bigelow Estop., p. 92.

To the same effect are *Indianapolis, etc., R. W. Co.* v. *Center Township*, 130 Ind. 89; *Mitchell* v. *French*, 100 Ind. 334; *Hays* v. *Carr, Admr.*, 83 Ind. 275; *Hutts* v.

*Martin*, 134 Ind. 587; Freeman on Judgments (4th ed.), section 120; 21 Am. and Eng. Encyc. of Law, 232, 233, 234, and authorities there cited; *Ringgenberg* v. *Hartman*, 124 Ind. 186.

It has been suggested that the appellee's inchoate interest had not yet arisen or accrued, and that it could not be the subject of litigation or adjudication. But that position is untenable, because the express terms of the statute authorizes the court, at least by implication, to direct, in a proper case, such interest by the judgment to be sold or barred. It has also been suggested that the court may have adjudged, as matter of law on the facts alleged in the cross-bill, and presumably proven, that the title never having been vested in appellee's husband, James A. Marshall, she never had any inchoate interest in the real estate in question.

It is a sufficient answer to that suggestion to say that no such subject for adjudication was presented by the pleadings in the suit to quiet title in the federal court. The present appellee, in her complaint to quiet title, made and set up no claim to an inchoate interest, but her claim was antagonistic to such interest. At all events, she nowhere affirmed the existence of such an interest. The cross-complainants, the present appellants, in their cross-complaint in no way denied or controverted such an interest in her. Their cross-complaint in the federal court sought to quiet the title in her husband and nothing else. To do that would establish her inchoate interest, and not destroy it. Had they been seeking to quiet title as against her inchoate interest, it would have been material and pertinent, if not necessary, for them to have alleged that Mrs. Marshall was making some claim to an inchoate interest. It is very clear, from their cross-bill, that they did not intend to take any such position against Mrs. Marshall, because her complaint

in the case, claiming the title in fee-simple, made it impossible for them to prove that she was asserting a claim to an inchoate interest. There was, therefore, no issue involving the question whether or not, on the facts alleged, she had an inchoate interest. The judicial power of the court was not invoked upon that question by any pleading. All the court was asked to adjudge was whether, upon the facts alleged, the conveyance to Mrs. Marshall was fraudulent as to creditors, and whether the property conveyed to her by her husband's vendor was liable to be subjected to sale to satisfy appellants' judgment.

We are therefore of opinion that the part of the decree of the federal court we are considering, being outside of the matters submitted to it by the pleadings of the parties, is not *res judicata*, and is not conclusive or binding on them.

It remains to inquire whether appellee, Mrs. Marshall, after the sale under the judgment and order of the federal court, had such an inchoate interest in the real estate sold as brought her within the purview of the statute quoted.

It has been held that a sale on an adjudication and order of a federal court is a judicial sale within the meaning of the statute in question. *Roberts* v. *Shroyer*, 68 Ind. 64; *Ketchum* v. *Schicketanz*, 73 Ind. 137; *McCracken* v. *Kuhn*, 73 Ind. 149.

But it is contended by the appellants that as the legal title was never in James A. Marshall, appellee's husband, but was conveyed directly by the vendor to Mrs. Marshall, she could not, either on the death of her husband or on judicial sale of the real estate, have any interest in it.

This contention is greatly strengthened when we are reminded that it is settled law that a conveyance for the

purpose of defrauding creditors can only be taken advantage of by such creditors, it being valid as to the parties and all other persons. And that the theory of the action for relief by the creditors is not to annul the deeds and revest the title in the original grantor, but to subject the property to sale to satisfy the creditors' just demands. *Stout* v. *Stout*, 77 Ind. 537; *Springer* v. *Drosch*, 32 Ind. 486; *O'Neil* v. *Chandler*, 42 Ind. 471; *Edwards* v. *Haverstick, Admr.*, 53 Ind. 348; *Garner* v. *Graves, Admr.*, 54 Ind. 188; *Etter* v. *Anderson*, 84 Ind. 333; *Anderson* v. *Etter*, 102 Ind. 115; Bump on Fraud. Conv., 443–445, and authorities there cited.

If the claims of creditors are satisfied, a fraudulent conveyance remains in full force. *State Bank* v. *Davis*, 4 Ind. 653.

Nevertheless it is now well settled by the decisions of this court under the statute in question that where real estate is fraudulently conveyed by the husband by deed in which his wife shall join, on subjecting the same to sale to satisfy creditors, the wife's inchoate interest of one-third becomes absolute and vested in her whenever the legal title to the other portion thereof, by virtue of such sale, becomes absolute and vested in the purchaser thereof. *Ketchum* v. *Schicketanz, supra; Mattill* v. *Baas*, 89 Ind. 220; *Rupe* v. *Hadley*, 113 Ind. 416.

A literal and strict construction of the statute would forbid such a holding. But the statute has been regarded as remedial and entitled to a liberal construction.

The statute has been construed, also, to apply to a case where there has been a judicial sale of the husband's lands, to which he had no other than an equitable title. *Shelton* v. *Shelton*, 94 Ind. 113; *Keck* v. *Noble*, 86 Ind. 1.

In a case where the husband and wife have joined in

a deed of conveyance of his lands which is afterwards adjudged fraudulent as to creditors, she is in no better situation to claim her inchoate interest in the land than in the case at bar, where the title was never in the husband, but which he fraudulently procured the vendor to convey to his wife. In neither case is the title actually in the husband at the time the inchoate interest is held to take its rise in the cases referred to, but, in both cases, is in the fraudulent grantee.

The reason given for such ruling in *Rupe* v. *Hadley, supra,* at page 422, is that "in such case, if the deed is void and ineffectual to convey the husband's real estate, it must be held that such deed is also void and ineffectual to convey, bar or release the wife's inchoate interest in such real estate, in the event she survives her husband, or in the event that such real estate is sold and conveyed as the husband's property, under a judicial sale thereof, and his title thereto becomes absolute and vested in the purchaser thereof at such sale."

In *Mattill* v. *Baas, supra,* at page 224, it is said: "As to creditors, it neither benefited the husband nor prejudiced the wife. In all respects, as between the bankrupt and his wife upon one side, and the creditors upon the other, the conveyance to Sparcke is to be regarded as though it had not been made."

The same reasoning may be applied here. The conveyance of the real estate in question to appellee, instead of being made to her husband by his vendor, neither benefited the husband nor prejudiced his wife, because appellants, as creditors of her husband, have procured a court of equity to deal with the property judicially in all respects as if the conveyance had been made to the husband instead of the wife. They have asked that court and it has complied with their request, and applied the maxim that equity will treat that as having been done

which ought to have been done, namely, that the deed ought to have been made to the husband instead of to the wife. Upon the grant of this just and equitable request they were permitted to expose at marshal's sale and buy in the real estate. And now that the wife proposes to regard the sale as based on the equitable principle they invoked, and without which they could not have had a sale or purchased any part of the property, they propose to repudiate the equitable principles upon which they reached their vantage ground.

There is another good reason that supports and upholds all that class of cases that awards to the wife an inchoate interest in the lands of her husband fraudulently conveyed and subjected to the payment of his debts, since the enactment of the statute in question; and it is this: The creditors have no right, since the enactment of that statute, to subject more than two-thirds of a married debtor's real estate, where it does not exceed in value $10,000, to sale on execution to pay their debts. When they come into a court of conscience and complain of a fraudulent conveyance of their married debtor they can, in good conscience, ask no more, and a court of conscience can grant no more than to restore to them all the rights they had before the wrong was done by their debtor—all the rights they had before the fraudulent conveyance was made, and that is to subject two-thirds of his real estate to the payment of their debts. That places them precisely in the position they would have occupied if the fraudulent conveyance had never been made; and in the case at bar, it places the appellants in the same position they would have occupied if the conveyance had been made to the husband, their debtor, instead of having been made to appellee, his wife. In that case they would have been legally entitled to subject two-thirds of the real estate in question to sale on

execution to satisfy their judgment and no more. There is neither law nor equity in their demand that they should receive more than that which they had when their debtor's wrong was done—should receive more than his wrong took from them.

By the finding and judgment of the trial court, they are restored to all the rights they had before the fraudulent conveyance was made. We are of opinion that the finding was well supported by the evidence, and was not contrary to law.

The judgment is affirmed.

Filed June 5, 1894.